UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION


RICKEY D. ARVIE                    :          DOCKET NO. 14-cv-3302
    D.O.C. # 448612

VERSUS                             :          JUDGE MINALDI


N. BURL CAIN                       :          MAGISTRATE JUDGE KAY


## REPORT AND RECOMMENDATION


Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C §
2254, filed by Rickey D. Arvie ("petitioner"). Doc. 1. The petitioner is a prisoner in the custody
of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the
Louisiana State Penitentiary in Angola, Louisiana. Darrel Vannoy ("respondent"), warden, has
responded. Doc. 20.

This matter is referred to the undersigned for review, report, and recommendation in
accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons
**IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED
WITH PREJUDICE**.

I.
BACKGROUND

### A. Conviction

The petitioner was indicted in the Fourteenth Judicial District, Calcasieu Parish, Louisiana,
on a charge of second degree murder. Doc. 20, att. 2, p. 59. The charge arose from the shooting
death of Tonya Majors ("victim"). *State v. Arvie*, 73 So.3d 516, 517 (La. Ct. App. 3d Cir. 2011).

Following a jury trial, the petitioner was convicted of second degree murder on April 23, 2010, and subsequently sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. Doc. 20, att. 2, pp. 43–54, 58.

### B.  Direct Appeal

The petitioner appealed his conviction and sentence to the Louisiana Third Circuit Court of Appeal. *Arvie*, 73 So.3d at 517. There he raised multiple assignments of error pro se and through counsel. Relevant to the instant proceedings are the following:

1.  The trial court erred in denying the defendant's repeated motions to represent himself at trial without conducting a *Faretta* hearing.

2.  There was insufficient evidence at trial to sustain the conviction.

3.  The trial court erred in denying the defendant's motions to suppress the evidence.

*Id.* at 518–35. The Third Circuit reviewed these claims on the merits and denied relief. *Id.* The petitioner sought review in the Louisiana Supreme Court which was denied on March 30, 2012. *State v. Arvie*, 85 So.3d 114 (La. 2012). He did not file a petition of certiorari in the United States Supreme Court. Doc. 1, p. 2.

### C.  Post-Conviction Relief

The petitioner then filed an application for post-conviction relief in the trial court on June 18, 2013. Doc. 5, att. 1, pp. 90–112. Relevant to the instant petition, he raised the following claims:

1.  Trial counsel rendered ineffective assistance prior to, during, and after trial in violation of petitioner's constitutional rights.

2.  Appellate counsel rendered ineffective assistance.

*Id.* at 92–110. The trial court reviewed the claims on the merits and denied relief. *Id.* at 115 (citing LA. C. CR. P. art. 929). The petitioner sought review in the Third Circuit, which upheld the trial

-2-

court's ruling. *Id.* at 148. He then sought review in the Louisiana Supreme Court which was denied on November 7, 2014. *State ex rel. Arvie v. State*, 152 So.3d 169 (La. 2014).

### D.  Federal Habeas Petition

The instant petition was filed on November 14, 2014. Doc. 1, p. 10. Herein the petitioner raises the following claims:

1.  The appellate court abused its discretion or erred in denying defendant's claim that the trial court was in error to deny petitioner's repeated motions to be allowed to represent himself at trial, without at least a minimum *Faretta* hearing to determine the merits of his motions.

2.  The appellate court abused its discretion or erred in denying petitioner's claim that the verdict of the jury was contrary to law and evidence as there was insufficient evidence, when viewed in a light most favorable to the prosecution, for the jury to find petitioner guilty of the crime charged beyond a reasonable doubt.

3.  The appellate court abused its discretion or erred in denying petitioner's claim that the trial court erred in denying the petitioner's motions to suppress the evidence.

4.  Trial counsel rendered ineffective assistance prior to, during, and after trial, in violation of petitioner's constitutional rights.

5.  Appellate counsel rendered ineffective assistance.

Doc. 1, att. 1, pp. 10–64.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

### A.  Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v.*

*Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is only tolled, however, while applications for state review are pending and not between resolution of state review and the filing of the federal habeas application. *See Carey v. Saffold*, 122 S.Ct. 2134, 2138 (2002). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. *Procedural Default and Exhaustion of State Court Remedies*

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to

satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[1] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

---

[1] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 123 S.Ct. 362, 365 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 125 S.Ct. 847, 850 (2005), quoting *Williams v. Taylor*, 120 S.Ct. 1495, 1519–20 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 975 (2006).

### III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

#### A. Timeliness

Here the petitioner's conviction became final ninety days after the judgment of the Louisiana Supreme Court on March 30, 2012, when his time for seeking review by the United States Supreme Court expired. *See* Sup. Ct. R. 13. Therefore the one year limit for filing this petition began to run on June 29, 2012. However, it was tolled by the filing of his application for post-conviction relief on June 18, 2013, after **354 days** had run. The limitations period was untolled with the ruling of the Louisiana Supreme Court on November 7, 2014, causing an additional **7 days** to accrue before the instant petition was filed on November 14, 2014. Accordingly, **361 days** are counted against the one year limit, making this petition timely.

#### B. Exhaustion of State Court Remedies and Procedural Default

All of the claims raised above were exhausted in the state courts and reviewed on the merits.

The respondent alleges that Article 929 of the Louisiana Code of Criminal Procedure, cited by the trial court in its denial of the petitioner's application for post-conviction relief, provides grounds for a procedural default. However, we note that Article 929 allows for summary disposition of post-conviction relief claims when "the court determines that the factual and legal issues can be resolved based upon the application and answer" and supporting documents "submitted by either party or available to the court . . . ." LA. C. CR. P. art. 929(A). In applying Article 929, the trial court stated that it "[had reviewed the supporting documentation submitted

by the Petitioner, [had] considered the conduct of the trial in this matter by counsel and [had] reviewed the filings on appeal by counsel on Petitioner's behalf" and thus concluded that there was no basis for an evidentiary hearing and that the record clearly refuted the claims raised. Doc. 5, att. 1, p. 115. Therefore it is clear that the trial court's ruling amounted to an adjudication on the merits and there is no basis for procedural default.

### C. Substantive Analysis

Having determined which claims are properly before this court, we review them under the standards described above.

#### 1. Failure to conduct a Faretta hearing

The petitioner first alleges that the trial court erred by denying his repeated motions to represent himself without conducting a *Faretta* hearing, and that his right to represent himself at trial was thereby violated.[2]

"[I]mplicit in the structure of the Sixth Amendment" is the right of a criminal defendant to represent himself at trial. *Batchelor v. Cain*, 682 F.3d 400, 406 (5th Cir. 2012) (citing *Faretta*, 95 S.Ct. at 2532–34). Denial of this right is a structural error, requiring automatic reversal of a conviction. *McKaskle v. Wiggins*, 104 S.Ct. 944, 950 n. 8 (1984). However, even if this right is asserted, it may be waived if the defendant indicates by his subsequent conduct that "he is vacillating on the issue or has abandoned his request altogether." *Brown v. Wainwright*, 665 F.2d 607, 610–11 (5th Cir. 1982) (en banc). Thus "[a] waiver may be found if it reasonably appears to the court that the defendant has abandoned his initial request to represent himself." *Brown*, 665 F.2d at 611. Additionally, the Fifth Circuit notes that, "[w]here a fundamental constitutional right,

---

[2] In *Faretta v. California*, the Supreme Court held that in order for a criminal defendant to represent himself, he must knowingly and intelligently waive his right to counsel. 95 S.Ct. 2525, 2541 (1975). The colloquy used to establish this waiver is thus known as a *Faretta* hearing. *See, e.g.*, *United States v. Long*, 597 F.3d 720, 723–24 (5th Cir. 2010).

such as the right to counsel, is concerned, courts indulge every reasonable presumption against waiver." *Burton*, 937 F.2d 131, 133 (5th Cir. 1991).

The record shows that the petitioner filed numerous *pro se* motions in the trial court. *See* doc. 20, att. 2, pp. 2–8 (chronological index). The first motion that involved his right to counsel came in a letter received on January 27, 2009. Doc. 20, att. 3, p. 186. There the petitioner asserted that he had waived his right to counsel and complained that his pro se motions were not being considered. *Id.* Accordingly, the trial court ordered a contradictory hearing for February 13, 2009, later apparently rescheduled for March 13, 2009, and then March 23, 2009.[3] *Id.* at 187, 190, 1999. The record shows that a hearing took place on March 23, 2009, at which it was determined that the petitioner was available for trial. Doc. 20, att. 2, p. 31. Other defense motions were heard between March 23 and June 12, 2009. *Id.* at 32–35. However, the record contains no transcript of this hearing from which we can determine that a colloquy satisfying *Faretta* was conducted. Accordingly, we can find no record that the 2009 waiver of counsel motions were ever heard.

On March 11, 2010, the petitioner filed a "Motion To Be Representative and Have Assistance" in which he again requested that he be allowed to represent himself. Doc. 20, att. 4, p. 90. The matter was heard, along with several other pending motions, on March 26, 2010. Doc. 20, att. 8, pp. 3–4. The petitioner appeared with counsel, Charles St. Dizier,[4] and the following colloquy took place:

> **The Court:** Okay. The only issue then is the motion to be representative and have assistance. He wishes to represent himself at trial; is that correct, Mr. Arvie?

---

[3] The petitioner also requested a hearing on the issue of waiver in letters received on March 3 and March 4, 2009. Doc. 20, att. 3, pp. 189, 193. The first request was denied as moot, given the hearing already scheduled. *Id.* at 190. As to the second, the trial court ordered a hearing on March 23, 2009. *Id.* at 199.

[4] The petitioner was initially represented by Richard White of the Calcasieu Parish Public Defender's Office. Doc. 20, att. 2, p. 30. The court accepted White's motion to withdraw on January 21, 2009, and appointed St. Dizier in his place. *Id.*

> **Petitioner:** Yes, sir.
>
> **The Court:** Why do you believe that that is in your best interest, sir, since you have counsel with you who's experienced in these kinds of serious cases?
>
> **Petitioner:** We've been having lack of communication and this is a very, very serious allegation, and I feel that, you know, I have to prepare a defense, and we don't have any communications, then I won't feel – I won't feel right with having him represent me, but I do request his assistance.

*Id.* at 21–22. St. Dizier then clarified that he had not communicated well with the petitioner but that he was preparing for trial and wanted to continue doing so, with the court determining closer to trial whether he would continue to serve as counsel or be relegated to a standby role. *Id.* at 22–23. The court then made the following ruling:

> The Court's not going to allow Mr. Arvie at this point to represent himself because he has extremely capable counsel on his case, and the issue is more one of trust and confidence, and you've got time between now and the date of trial to work on that part of it. But he's not presented anything substantive to bring into question either Mr. St. Dizier's inability to try the case, and he . . . has no evidence to suggest that he would be nearly as capable. In fact, it would be a huge drawback for Mr. Arvie to attempt to represent himself in front of a jury. So I'm going to allow them to work together. We'll revisit the issue during the trial week, and if there are some glaring problems at that time we'll just deal with it. But all I do is ask Mr. St. Dizier to work on the communication issue, primarily, because that would solve everything.

*Id.* at 24. The petitioner made no objection to the ruling.

The petitioner does not allege, and the record does not reflect, that any further motions or requests were made on the issue of self-representation. He contends that the trial court erred by conducting the above colloquy, rather than adhering to the guidelines set forth in *Faretta*, and then summarily rejecting the request. However, as the Third Circuit determined, the petitioner's final request was not an unequivocal assertion of his right to self-representation. Instead he made it clear that he still desired the assistance of his attorney. Furthermore, his failure to object to the trial

court's rulings or to make any request for self-representation through the rest of the proceedings indicates that he had abandoned that desire.

Given the presumption against waiver of the right to counsel, we must regard any request for self-representation as abandoned by the petitioner's conduct at the March 2010 hearing. Accordingly, the petitioner shows no right to federal habeas relief under this claim.

### 2.  Sufficiency of Evidence

The petitioner next alleges that there was insufficient evidence at trial to sustain a conviction of second degree murder.[5]

A defendant's constitutional right to due process is violated when he is convicted of a crime without the state having met its burden of proof on every element of the offense. *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 90 S.Ct. 1068, 1073 (1970)). Such claims are decided by determining whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted).

At trial testimony from law enforcement officers established that a 911 call was made from the petitioner's residence at 6:04 am on February 10, 2008. Doc. 20, att. 4, pp. 247–49; doc. 20, att. 5, pp. 142–43. In that call a male subject reported that he had been taking a bath or shower when someone entered his home, shot him, and then shot his wife. Doc. 20, att. 4, p. 247.

Officer Joe Savoie, who received the dispatch, testified that he arrived at the scene and observed that the door to the residence had been pried or kicked open. *Id.* at 247–49. Savoie entered

---

[5] Under Louisiana law, second degree murder is defined in part as the killing of a human being "[w]hen the offender has a specific intent to kill or inflict great bodily harm . . . ." LA. REV. STAT. § 14:30.1. Specific intent is a question of fact and may be inferred from the circumstances. *State v. Ordodi*, 946 So.2d 654, 661 (La. 2006).

the bedroom saw the petitioner holding a towel to the victim, who was bleeding from several gunshot wounds and appeared to be dead. *Id.* at 250–51. A small child was also in the bedroom with the petitioner and victim. *Id.* The petitioner told Savoie "that he got in a fight with someone [who] came in the door" and that this person had shot the petitioner in the hand. Doc. 20, att. 5, p. 20. Witnesses for the state testified that the blood and the victim's wounds did not appear to be fresh, with the ambulance driver noting that rigor, which by his account takes three to four hours to appear, had set in.[6] *Id.* at 25; *see also id.* at 149, 181–82.

Detective Marcus McCullough testified that he interviewed the petitioner at the hospital later that day. *Id.* at 28–30. The petitioner told McCullough that an intruder entered the apartment and began firing shots, going toward the living room with the victim. *Id.* at 30–31. The petitioner stated that he locked himself in the bathroom with the child for some time, and that he realized then that he had been shot in the hand. *Id.* at 31. After some time, according to the petitioner, he left the bathroom, called the police, and discovered the victim's body in the bedroom. *Id.* at 31–32. He told McCullough that he believed the intruder to be a man named Randy, with whom the victim had been romantically involved. *Id.* at 32.

Detective Lecia McCullough testified that she obtained statements from numerous neighbors and acquaintances. *Id.* at 88. These statements revealed that, around the time of the shooting, the petitioner and victim had had a "major disagreement" over the victim's involvement with a man named Theo White. *Id.* at 87–88. Theral King, an acquaintance of the petitioner, testified that the petitioner called him the day before the murder and "seemed really upset" by the

---

[6] The petitioner points to the time of death of 5:00 am on the death certificate.  However, the coroner, Dr. Terry Welke, testified that this time was only an approximation and that the actual time of death could have been hours before. Doc. 20, att. 5, pp. 208–09. He also stated that he found blood in the victim's lungs, indicating that she had lived for a time after the shooting. *Id.*at 201. Accordingly, the death certificate does not contradict the above testimony or otherwise corroborate the petitioner's theory of the case.

-13-

news that the victim had slept with White. *Id.* at 237–38. King tried to calm the petitioner down and the petitioner responded, "I'm gonna handle it, you know what I'm saying." *Id.* at 238. Another acquaintance, Aaron Harrison, testified that the petitioner called him around 2:00 am on the morning of February 10. Doc. 20, att. 6, pp. 47–48. When Harrison called the petitioner back, the petitioner stated that he thought he had killed Tonya.[7] *Id.* at 48. The petitioner also told Harrison that he accidentally shot himself in the hand. *Id.* at 52.

The petitioner's main contention under this claim, apart from the apparent contradiction handled at notes 6 and 7, is that the state did not present any physical evidence. He introduces numerous alleged gaps and contradictions in the state's presentation of the evidence. He also alleges that improper weight was given to the evidence above, citing the "every reasonable hypothesis" approach taken by Louisiana courts in evaluating circumstantial evidence.[8]

This approach does not change the standard of review under *Jackson*, *supra*. Instead, they "merely [provide] a reviewing court with a means to assess whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Hill v. Johnson*, 210 F.3d 481, 491 (5th Cir. 2000). *Jackson* also instructs a reviewing court to resolve any apparent conflicts in the record in favor of the prosecution. *Cavazos v. Smith*, 132 S.Ct. 2, 6 (2011). Therefore the petitioner's numerous allegations of gaps in the evidence or alternate explanations are also unavailing. Thus the petitioner has not shown that the evidence above, viewed in the light most favorable to the

---

[7] On this point the petitioner points to the testimony of Detective Franklin Fondel, alleging that the detective stated that the phone records did not show any calls from the petitioner's phone between 1:30 am and 5:30 am on the morning of the shooting. However, no such statement appears in Fondel's testimony and Fondel does not indicate that he conducted any review of the petitioner's phone records. *See* doc. 20, att. 5, pp. 172–77.

The petitioner also alleges that state's exhibit S-47 provides a record of his cell phone usage on the morning of the shooting. However, this exhibit is actually a DVD containing the petitioner's statement. *Id.* at 17. None of the other exhibits appear to contain phone records. *See id.* at 16–18.

[8] "The statutory rule in evaluating the sufficiency of circumstantial evidence is, 'assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.'" *State v. Johnson*, 21 So.3d 1159, 1163 (La. Ct. App. 3d Cir. 2009) (quoting LA. REV. STAT. § 15:438).

state, was insufficient to support his conviction, and he is not entitled to federal habeas relief under this claim.

### 3.   *Denial of motions to suppress*

The petitioner's next claim relates to the trial court's denial of his motion to suppress a cell phone seized from his home and the fruits of that evidence on Fourth Amendment grounds.

As the respondent points out, federal habeas relief is not available to prisoners on Fourth Amendment violations so long as the state "provided an opportunity for full and fair litigation" of the grounds for suppression. *Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2005) (citing *Stone v. Powell*, 96 S.Ct. 3037, 3052 (1976)).

Here the petitioner alleges no inadequacies in the trial court's consideration of his motion or the Third Circuit's review of same, other than his disagreement with the result. Accordingly, he is not entitled to federal habeas relief under this claim.

### 4.   *Ineffective assistance by trial counsel*

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict.  *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct.

at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

The petitioner alleges numerous instances of deficient performance by trial counsel. We review these under the standards set forth above.

### a. Failure to perform pre-trial discovery/investigation and communicate with client

The petitioner first alleges that the record clearly indicates that his trial counsel failed to adequately prepare for trial or investigate the petitioner's case. However, as the respondent points out, the record makes no such showing.

White, the petitioner's original trial counsel, filed a Motion for Discovery and Inspection, a Motion for a Bill of Particulars, a Motion to Suppress, and a Motion to Reduce Bond. Doc. 20, att. 2, pp. 76–78, 79–84, 87–88, 90–91. All hearings on these motions were attended by White or his successor, St. Dizier. *Id.* at 23–33. The petitioner fails to allege any specific steps that his attorneys should have taken in this matter and did not. Accordingly, he has not satisfied *Strickland*'s first prong with respect to this claim.

The petitioner also complains that trial counsel failed to communicate with him and that this failure prevented him from effectively participating in his defense. To this end he points to his "Motion To Be Representative and Have Assistance." *See* doc. 20, att. 4, p. 90. Although the petitioner did not complain about communication issues in that motion, he did allege at the hearing that he and St. Dizier "don't have any communications." Doc. 20, att. 8, pp. 21–22. After denying the motion, the trial court also asked St. Dizier "to work on the communication issue, primarily, because that would solve everything." *Id.* at 24.

Assuming that the petitioner's allegations about communication are true, his general and self-serving statements about participation in his own defense are not enough to show adequate harm under *Strickland*. He provides no detail about the information he would have provided or ways he would have contributed if counsel had communicated with him, or how same would have changed the outcome of his trial. Accordingly, he has not shown a right to federal habeas relief under these allegations.

The petitioner also requests an evidentiary hearing under this claim. However, conclusory allegations unsupported by specific facts are insufficient to show entitlement to a hearing on federal habeas review. *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006). The allegations above provide no specific facts from which we can determine that the petitioner might be able to show ineffective assistance of counsel. The request for a hearing is therefore denied.

### b.  *Failure to properly prepare and present Motion to Suppress*

The petitioner next alleges that trial counsel performed deficiently in preparation and presentation of his Motion to Suppress relating to the cell phone recovered from the crime scene. The respondent contends that the same principles barring review of these allegations above should also render them harmless error under *Strickland* review. However, the Supreme Court holds that *Stone*'s restrictions do not fully apply to Sixth Amendment claims based on trial counsel's failure to competently litigate a Fourth Amendment claim. *Kimmelman v. Morrison*, 106 S.Ct. 2574, 2583–85 (1986). Thus the petitioner may prevail on ineffective assistance grounds if he can show that counsel's presentation of the Motion to Suppress amounted to deficient performance and that the petitioner was thereby sufficiently prejudiced.

This claim relates to counsel's failure to raise certain facts and to argue Fourth Amendment jurisprudence in the manner desired by the petitioner.[9] Trial counsel's presentation of the motion to suppress is a strategic decision.[10] Accordingly, it amounts to deficient performance "only if it was so patently unreasonable that no attorney would have chosen it." *Cross v. Johnson*, 169 F.Supp.2d 603, 619 n. 14 (N.D. Tex. 2001) (citing *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

The motion at issue here concerned seizure of a cell phone from the petitioner's residence, which was also the scene of the crime. The sole witness at this hearing was Detective Lecia McCullough. She testified that the petitioner had invited law enforcement into his home by dialing 911. Doc. 20, att. 9, p. 51. Once inside the residence, law enforcement seized two cell phones. *Id.* At this time the petitioner was at the hospital and, according to McCullough, was a victim rather than a suspect. *Id.* at 50. McCullough stated that the phones were seized in order to identify phone calls made to the victim, and that both phones were seized because they were not sure which phone belonged to the victim. *Id.* at 51–52. Law enforcement later obtained search warrants to get call records from the phones. *Id.* at 54.

Defense counsel then argued, based on precedent from the Louisiana Supreme Court, that the phones were seized without consent and that the state had not shown any justification for law enforcement's failure to obtain a warrant. *Id.* at 55–59. Meanwhile, the state contended that the seizure was justified as law enforcement had been invited in by the petitioner's 911 call and the

---

[9] The only Motion to Suppress by the defense was filed on June 9, 2008. Doc. 20, att. 2, pp. 87–88. The motion came up for hearing on June 25, 2008, and the trial court granted trial counsel's request to pass on the motion without a date. Doc. 20, att. 9, p. 6. The motion was then reurged by defense counsel and came up for hearing on October 22, 2008. *Id.* at 48–61. At the conclusion of this hearing the trial court denied the motion. *Id.* at 60–61.

[10] *See, e.g.*, *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007) ("While [counsel's] decision not to cite cases in his motion to suppress may qualify as a questionable strategic choice, in light of his performance at the suppression hearing and the latitude this court gives to strategic decisions, we cannot conclude that his overall representation was constitutionally ineffective.")

phones were seized as evidence of the crime. *Id.* at 59. The state also distinguished the precedent relied on by defense, noting that the defendants in those cases were suspects at the time of the seizures. *Id.*

The trial court made no finding on the justifications for seizure of the phones. *Id.* at 60–61. Instead, it noted that "the cell phones in and of themselves are practically useless," and that the call records were the real evidence in dispute. *Id.* The trial court determined that these records would have been readily obtainable by law enforcement and so it declined to suppress them as fruits of an illegal seizure. *Id.*

The petitioner provides citations to Supreme Court cases defining the exclusionary rule. However, the basis of the trial court's ruling was that the petitioner's call records would have been uncovered by some other means, and were thus an exception to exclusion. On this point the petitioner only offers challenges to the chronology of when phone records were obtained, in order to allege that seizure of the phones allowed the state to begin contacting certain witnesses before a warrant was obtained. Doc. 1, att. 1, p. 49. He cites to appendices not contained in the record on this matter. *Id.* However, he does not allege the extent of the time advantage gained by the state or how it led to any other impermissible advantage in the investigation. Therefore he does not show that trial counsel's arguments on the motion amounted to deficient performance. Accordingly, the petitioner does not show a right to federal habeas relief under this claim.

### c.   *Failure to request necessary funds*

The petitioner next alleges that trial counsel was ineffective for failing to request and obtain funds to pay for expert assistance. The petitioner merely states that an expert could have supported the testimony of Dr. Terry Welke and Patrick Lane. As stated *supra* in note 6, Welke noted the

time of death as 5:00 am on the death certificate but cautioned that this was an approximation and the actual time could have been hours before. Doc. 20, att. 5, pp. 208–09.

Patrick Lane, an employee of the state crime lab, was called by the state to testify on firearms identification and was qualified as an expert in that field. *Id.* at 151–52, 156. He ran tests on bullets recovered from the scene and testified that they were fired from an older British or American .44 caliber revolver. *Id.* at 156–63. The petitioner alleges that Lane testified that the gunshot wound to the petitioner's hand was made from a distance of at least three feet. Thus, the petitioner posits, the wound could not have been self-inflicted, especially if made with a large-caliber revolver.

Lane testified that he would expect to see gunshot residue on a shot fired within three feet from the target on that caliber weapon. *Id.* at 167–68. The petitioner does not show how this would contradict the contention that his gunshot wound was self-inflicted.  Petitioner accurately points out that his clothes and injured hand were never tested for gunpowder residue. Doc. 1, att. 1, p. 53.

The petitioner fails to allege what kind of expert could have bolstered Welke's statement and in what manner. Furthermore, Lane's testimony does not contradict the state's contention that the gunshot wound was self-inflicted. The petitioner's self-serving allegations that gunpowder residue testing would have shown the wound could not be self-inflicted insufficient to support a finding that any testing was likely to reveal exculpatory information, especially as the petitioner does not acknowledge that the tests might just as easily have yielded inculpatory results. *E.g.*, *Chandler v. Marshall Cty. Corr. Ctr.*, 2010 WL 3717231, *10 (N.D. Miss. Sep. 14, 2010). Moreover, the petitioner fails to show how an additional expert was needed to bolster Lane's testimony when it was not refuted by any other part of the state's evidence.

-20-

The state's decision not to test for gunpowder residue enabled defense counsel to introduce an element of reasonable doubt during closing argument, rendering the decision not to test items preserved in evidence to be sound trial strategy by the defense.[11] Therefore he cannot show that counsel performed deficiently in declining to retain an expert, nor that he was adequately prejudiced by the omission. He does not demonstrate a right to federal habeas relief under this claim.

The petitioner also requests an evidentiary hearing under this claim. As noted *supra*, conclusory allegations unsupported by specific facts are insufficient to show entitlement to a hearing on federal habeas review. *Washington*, 455 F.3d at 733. The allegations above provide no specific facts from which we can determine that the petitioner might be able to show ineffective assistance of counsel. The request for a hearing is therefore denied.

### d.   *Failure to present a defense*

The petitioner next alleges that his trial counsel failed to present a defense. Under this claim he renews his allegations on failure to retain an expert or test for gunpowder residue, which we have already found to be without merit. Thus the petitioner does not show a right to relief under this claim.

### e.   *Failure to object to prosecutor's remarks*

The petitioner alleges that trial counsel should have objected to the following remarks made by the prosecutor during closing argument:

> Let's talk about the alleged assailant's description. The defendant described the assailant about the same height as himself, only a little

---

[11] At closing defense counsel pointed out that the state's evidence only consisted of circumstantial evidence, the petitioner's "bad interview," and damaging testimony from the petitioner's friends. Doc. 20, att. 6, p. 149. He stated, "Again, [the petitioner] was not tested for residue, there's no evidence that there was any gunshot residue on his hands, so it's inconclusive. You may well entertain the possibility that [he] shot himself in the hand, but we have no proof." *Id.* at 160. He also pointed to photographs in evidence and the fact that a self-inflicted wound would have had to be inflicted with the petitioner's non-dominant hand to cast doubt on this element of the state's case. *Id.* at 159–60.

skinnier, wearing a black shirt and black pants. And remember the items of evidence that were recovered from the defendant at the hospital, black shorts, black tennis shoes, and a dark blue sweatshirt. I will submit to you that that's no coincidence, Ladies and Gentlemen. He was describing himself to police as the alleged assailant in the house. He had been working on this plan.

Doc. 20, att. 6, p. 137. The petitioner alleges that these remarks violated state law prohibitions on the prosecutor offering a personal opinion on the credibility of a witness or the guilt or innocence of the accused, or turning the closing argument into a plebiscite on crime.

Article 774 of the Louisiana Code of Criminal Procedure provides the scope of argument as follows:

The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice.

It is plain that the above remarks were not merely a personal opinion, nor in any way a plebiscite on crime, but instead an argument based on the evidence. The petitioner thus demonstrates no basis for an objection, meaning that trial counsel's failure to do so cannot amount to deficient performance. Accordingly, the petitioner is not entitled to federal habeas relief under this claim.

### f.   Ineffectiveness at sentencing

Sentencing took place on June 17, 2010.  Doc. 20, att. 6, p. 236. There the petitioner was represented by Ginger Vidrine, who enrolled as council of record on June 8 or 9, 2010. *Id.*; doc. 20, att. 4, pp. 143–44. He alleges that she provided ineffective representation based on her lack of familiarity with the case and her failure to accommodate the petitioner's desire to speak.

Assuming *arguendo* that these contentions are true, the petitioner cannot show adequate prejudice under *Strickland*. As the respondent notes, the petitioner was convicted of second degree murder and thus facing a mandatory sentence of life imprisonment under Louisiana law. LA. REV.

-22-

STAT. § 14:30.1(B). He cannot show that any deficiencies of performance by counsel precluded him from receiving a more lenient sentence. He is therefore not entitled to relief under this claim.

### g. Cumulative error[12]

Finally, the petitioner contends that he is entitled to relief based on the cumulative effect of the errors raised above. However, even in the cases where we have assumed an error for the sake of argument, the petitioner failed to show any resulting prejudice. Accordingly, he cannot satisfy the second prong of *Strickland* and is not entitled to relief under this claim.

### 5. Ineffective assistance by appellate counsel

The petitioner next alleges that his appellate counsel performed deficiently by failing to raise every non-frivolous issue on appeal. However, he points to the other claims in this brief as those he believes should have been raised.[13] Based on our finding of no merit to any of the above, he cannot satisfy either prong of *Strickland* for appellate counsel's omission of those claims. He is therefore not entitled to federal habeas relief.

### IV.
### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

---

[12] The petitioner raises the issue of cumulative error twice, as (a) and (h) under his ineffective assistance of trial counsel claim. Doc. 1, att. 1, pp. 43, 60–62. We review the contentions together here.

[13] He also briefly asserts that trial counsel should have raised an error relating to the trial court's alleged denial of a continuance "to allow new counsel (Ms. Ginger Vidrine) time to prepare for sentencing and oral argument of motion for new trial, and that petitioner was not allowed to speak at sentencing." The motion for a new trial was heard on June 16, 2010, with Vidrine appearing and arguing on the petitioner's behalf. *Id.* at 223–33. We cannot locate any record that a request for continuance was made by the defense on this motion. After the trial court denied the motion for a new trial, Vidrine requested and was granted a 24 hour delay before sentencing. *Id.* at 233–34. The sentencing transcript does not show that the trial court prevented the petitioner from speaking at that hearing. *Id.* at 236–39. There does not appear to be any trial court action to challenge in the manner sought by the petitioner. Accordingly, he shows no merit to these claims.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 17th day of October, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE